Negroni Cintrón, Juez Ponente
*1146 TEXTO COMPLETO DE LA SENTENCIA
Inconforme con parte de la resolución que emitiera el Departamento de Asuntos del Consumidor ("DACO") el 8 de noviembre de 1995, según modificada en reconsideración por dicha agencia administrativa mediante subsiguiente resolución dictada y notificada el 13 de diciembre del mismo año, Antonio J. Amadeo Murga instó el recurso que nos ocupa ante el anterior Tribunal Superior de Puerto Rico, Sala de San Juan. Solicitó que se revisara la parte del dictamen del DACO que relevó a la fiadora, El Fénix de Puerto Rico ("El Fénix") de satisfacer el pago de la suma de $16,136.83 que mediante la resolución de referencia el DACO le ordenó pagar a las recurridas Mansiones de la Marina, S.E., Multiple Diverse Investments, Inc. y a Continental Construction Co. como indemnización al recurrente por los daños y perjuicios que le causaron a éste, al dejar de corregir a tiempo los defectos de construcción de un inmueble que éste adquirió de la co-recurrida Mansiones de la Marina, S.E.
Cumpliendo con lo dispuesto por el artículo 9.004 de la Ley Núm. 248 de 25 de diciembre de 1995, enmendatoria de la Ley de la Judicatura de Puerto Rico de 1994, el anterior Tribunal Superior nos refirió el recurso del epígrafe. Examinado el mismo le concedimos a los recurridos término para que mostraran causa por la cual no debíamos expedir el auto solicitado para revocar la parte del dictamen del DACO que relevó a El Fénix de la responsabilidad que como fiadora tenía. Transcurrido el término concedido sin que comparecieren a oponerse, procede que resolvamos el recurso según intimado.
Al relevar de responsabilidad a El Fénix de Puerto Rico, el DACO razonó lo siguiente:
"No le asiste la razón a la parte querellante en este aspecto [que El Fénix de Puerto Rico sea responsable por la compensación ordenada] ya que este Departamento no congeló la fianza prestada y procede que se desestime la querella en su contra."
El recurrente le imputa al DACO haber incurrido en error de derecho al resolver de esa manera. Tiene razón.
El 4 de marzo de 1993, el recurrente adquirió de la corecurrida Mansiones de la Marina, S.E. una parcela de terreno de 269.74 metros cuadrados ubicada en Carolina y una unidad de vivienda de concreto reforzado construida sobre aquélla, mediante escritura pública otorgada en esa fecha. Después de reclamarle directamente y sin éxito al vendedor para que arreglara ciertos defectos de construcción en la estructura antes indicada, el 24 de agosto de 1994 el recurrente presentó una querella formal ante el DACO señalando los defectos de construcción en su propiedad, solicitando que se tasaren los daños y que se le autorizara reparar los defectos encontrados en su propiedad. Como El Fénix había otorgado una fianza para garantizar el cumplimiento de las obligaciones del vendedor, el recurrente la incluyó como co-querellada.
El 6 de octubre de 1994, un inspector del DACO realizó una inspección ocular de la *1147 propiedad del recurrente en la que estuvieron presentes el Sr. Esteban Galvá, Gerente de Servicio y representante de la Compañía Continental Construction Co, y el recurrente. El 2 de febrero de 1995 el inspector produjo un informe en el que confirmó la existencia de defectos de construcción y el costo de la corrección de éstos. Recomendó, además, la celebración de una vista administrativa. En esa misma fecha el DACO le notificó al recurrente y a todos los recurridos copia del informe rendido por el inspector, se les advirtió de sus derechos con respecto al informe y que serían citados a una vista administrativa próximamente.
El DACO citó a las partes para una vista administrativa que celebró el 19 de julio de 1995 a la que únicamente comparecieron el recurrente y su representación legal. Practicada la prueba, dicho organismo emitió una resolución el 8 de noviembre de 1995 en la que le concedió treinta días a los todos los recurridos, excepto El Fénix, para que corrigieran los defectos de construcción que se señalan en el dictamen, apercibiéndoles que si no lo hacían vendrían obligados a satisfacerle al recurrente la suma de $6,170.40.
Mediante moción de reconsideración presentada a tiempo, el recurrente le solicitó al DACO que a base de la prueba que se había presentado en la vista celebrada modificara la suma de daños concedida para aumentar la partida referente a la renta que había dejado de percibir y determinara que El Fénix era también responsable del pago impuesto a las restantes recurridas. El DACO accedió a lo primero y, como antes indicamos, se negó a conceder lo segundo. Al así dictaminar, erró.
El artículo 8 de la Ley Núm. 130 del 13 de junio de 1967, según enmendada por la see. 4 de la Ley Núm. 160 del 9 de junio de 1976, 17 L.P.R.A. see. 508, dispone lo siguiente:

"El Oficial de Construcción podrá, luego de haber realizado los estudios necesarios sobre el particular, exigir al urbanizador o constructor que al momento del otorgamiento de la escritura de compraventa final de la vivienda, éste preste una fianza o seguro por una suma no mayor de diez por ciento (10%) del precio de venta de dicha vivienda. El Oficial de Construcción podrá disminuir dicho por ciento tomando en cuenta el costo de la prima, la disponibilidad del seguro en el mercado de Puerto Rico y la mejor práctica comercial compatible con la mayor protección para el comprador. Dicha fianza o seguro se mantendrá vigente por el término mínimo de dos (2) años a partir de la fecha del otorgamiento de la escritura de compraventa final de la vivienda.

La fianza o seguro será para garantizar los gastos de reparación y corrección de los defectos en la construcción y podrá ser en metálico, pignoraticia, hipotecaria o solidaria a prestarse por compañía o corporación de garantías y fianzas autorizadas a hacer negocios en Puerto Rico. En los casos en que la fianza sea en metálico se prestará ante el Secretario de Hacienda y será retenida en una cuenta especial; en los demás casos se entregará el documento de fianza o seguro al Oficial de Construcción." (Enfasis suplido.)
En virtud de la facultad que le fueron conferidas por la misma Ley Núm. 130, supra, el Secretario de Asuntos del Consumidor asumió las responsabilidades concedidas al anterior Oficial de Construcción y procedió a aprobar el "Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico", el cual entró en vigor el 17 de septiembre de 1977. La Sección 7 del mismo dispuso en lo pertinente lo siguiente:

"Todo urbanizador y/o constructor vendrá obligado al momento de otorgar toda escritura de compraventa de una vivienda, a prestar una fianza o seguro equivalente al dos por ciento (2%) del precio de venta de dicha vivienda. El corredor de bienes raíces no vendrá obligado a prestar fianza o seguro. Queda a discreción del Secretario aumentar la fianza o seguro hasta el máximo de diez (10%) porciento que dispone la Ley en aquellos casos que lo creyese 
*1148
conveniente de acuerdo a los siguientes criterios:

a)...

b)...

c)....

Esta fianza o seguro se mantendrá vigente por el término de dos (2) años a partir de la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda. Esta fianza o seguro garantizará los gastos de reparación y corrección de defectos de construcción al comprador original o compradores subsiguientes que hayan adquirido dicha vivienda dentro de los dos (2) años siguientes a la fecha del otorgamiento de la escritura de compraventa del comprador original de la vivienda, hasta el monto de la misma en aquellos casos en que el urbanizador y/o constructor no haya procedido a corregir las mismas dentro de un período de tiempo razonable, según lo haya así determinado el Secretario. Esta disposición sobre el monto de la fianza o seguro no significa límite a la responsabilidad del constructor bajo otras disposiciones legales.

La fianza podrá ser en metálico, pignoraticia, hipotecaria o solidaria, a prestarse por compañía o corporación de garantía y fianzas autorizadas a hacer negocios en Puerto Rico. En aquellos casos en que la fianza se presta en metálico ésta se prestará ante el Secretario de Hacienda de Puerto Rico, el cual la retendrá en una cuenta especial. Será deber del constructor y/o urbanizador enviar al Secretario por correo certificado con acuse de recibo copia del documento acreditativo del depósito efectuado por este concepto ante el Secretario de Hacienda dentro de los diez (10) días siguientes al depósito. En todos los demás casos se enviará por correo certificado con acuse de recibo el documento de fianza o seguro al Secretario dentro de los treinta (30) días al otorgamiento de la escritura de compraventa.

Tan pronto se radique querella por un comprador en relación a defectos de construcción, la fianza quedará sujeta a los resultados de esa querella, o sea, se interrumpe por dicha acción el período de vencimiento de dicha fianza. La notificación al fiador se hará de acuerdo al procedimiento establecido en la Sección de Querellas de este Reglamento." (Enfasis nuestro.)
Por su parte, la Sección 20 del mismo cuerpo de reglas dispone lo siguiente:

"Toda querella a que tenga derecho un consumidor bajo este Reglamento podrá ser radicada en el Departamento o su sucesora, de acuerdo con las Leyes y este Reglamento.

Cualquier optante o cualquier COMPRADOR de una vivienda podrá radicar en el Departamento una querella alegando que el urbanizador y/o constructor de su vivienda ha incurrido en una práctica indeseable de construcción o ha violado alguna de las disposiciones de las Leyes o este Reglamento, a tenor con lo dispuesto en los Artículos (6) y (15) de la Ley Núm. 5 del 23 de abril de 1973, según enmendada.

Al radicar la querella, el querellante hará constar que ha requerido previamente al urbanizador y/o constructor personalmente o por correo que remedie la práctica indeseable de construcción o que cumpla con la disposición pertinente sin que éste lo haya hecho. Una vez que el comprador radique la querella, el Secretario notificará a la compañía aseguradora o que proceda a congelar la fianza o seguro que fue prestada según lo dispuesto en la Sección 10 de este Reglamento, hasta tanto haya una decisión, resolución u orden final y firme sobre dicha querella. El Secretario empleará todas las facultades y poderes que le han sido conferidos por la Ley Núm. 5 del 23 de abril de 1973, según 
*1149
enmendada, para la investigación, tramitación, adjudicación y disposición de las quejas y querellas que se traigan ante su consideración, bajo las disposiciones de las Leyes y este Reglamento.

Cuando la resolución, orden o decisión del Secretario sobre la querella se haya convertido en final y firme, éste notificará por correo certificado al fiador o al asegurador para que transcurridos veinte (20) días sin que el urbanizador y/o constructor haya cumplido con la orden, o sin que estuviere activa y diligentemente ocupado en tal cumplimiento, éste entregue al querellante en efectivo o cheque certificado la cantidad necesaria para cubrir los gastos de reparación o corrección de los defectos de construcción, hasta un máximo del monto de la fianza. El fiador o asegurador enviará al Secretario constancia de haber entregado dicha cantidad al querellante. La notificación al fiador o asegurador será efectiva al momento de depositarse en el correo.

Las resoluciones, órdenes y decisiones del Secretario podrán ser objeto de reconsideración y revisión judicial a tenor con los procedimientos dispuestos en los Artículos 16 y 17 de la Ley Núm. 5 del 23 de abril de 1973, según enmendada." (Enfasis nuestro.)
Una serena y cuidadosa lectura de las secciones citadas demuestra meridianamente que la simple presentación de una querella ante el DACO dentro del término de dos años, contados a partir de la fecha en que se otorgó la escritura de compraventa, es suficiente para interrumpir el término de vencimiento de la fianza. Esta interrupción dura hasta que se adjudiquen los méritos de la querella presentada por el comprador y la resolución u orden emitida por el DACO sobre el particular advenga final y firme. Ello extiende automáticamente, en cuanto a la querella se refiere, el tiempo durante el cual la fiadora es responsable por los incumplimientos del constructor que el DACO determine.
Aunque la Sección 7 dispone que una vez que el comprador presente la querella el Secretario notificará a la compañía aseguradora o fiadora para que proceda a congelar la fianza o seguro que fue prestada hasta tanto se produzca una decisión, resolución u orden final y firme sobre dicha querella, ninguna parte del reglamento citado requiere que esa notificación indique expresamente que la fianza está siendo "congelada" por el DACO utilizando las palabras exactas de la secciones 7 y 20 antes citadas. La lectura de las citadas secciones no dejan duda alguna que no es la notificación que el DACO efectúa lo que "congela" la fianza, aunque ello sea recomendable y práctico. La presentación de la querella dentro del término de dos años a partir de la fecha en que el comprador otorga las escrituras de compraventa es lo que produce el efecto interruptor o paralizante del término de vigencia de la fianza. La notificación a los querellados constituye un requisito procesal debido y necesario para que la fiadora o aseguradora queden informadas de la presentación de la querella, como antesala de su derecho a ser oído sobre los méritos de la querella. El que el DACO curse la notificación a las querelladas constituye suficiente aviso de que la querella ha sido presentada y que con ello el término de dos años ha quedado interrumpido.
Con vista a lo expuesto, el DACO se equivocó al no extenderle a El Fénix la responsabilidad que previamente le impuso a las restantes co-querelladas de satisfacerle al recurrente Amadeo Murga la suma de $16,136.83, hasta el monto de la fianza prestada, basándose en que "... este Departamento no congeló la fianza prestada y procede que se desestime la querella en su contra." De conformidad con lo dispuesto en la Sección 7 del reglamento citado, el recurrente es un comprador que presentó su querella dentro del término de dos años reglamentarios e hizo constar que le había requerido previa y personalmente al constructor y vendedor la naturaleza de los defectos que encontró en la propiedad adquirida para que éste remediara los defectos de la construcción, sin éxito. Apenas cinco meses después de presentada la querella y todavía dentro del término de dos años requerido, el 2 de febrero de 1995, el DACO le notificó a las recurridas, incluyendo a *1150 El Fénix, que se había presentado la querella; que había realizado una inspección ocular y se había rendido un informe; que dicho informe podía ser objetado y que las partes tenían el derecho de solicitar la presencia del técnico investigador y que próximamente se celebraría una vista administrativa. La vista se celebró y ninguna de las co-querelladas recurridas, incluyendo a El Fénix, compareció a ésta no obstante haber sido debidamente notificadas."
Toda vez que el reglamento adoptado por el DACO desde 1977 claramente informa que la presentación de la querella dentro del término de dos años interrumpe el decursar del término hasta que la resolución del DACO sea final y firme, la notificación efectuada el 2 de febrero de 1995 constituyó real y efectiva notificación a El Fénix de que la fianza por ella prestada estaba "congelada", tal y como requiere la Sección 20 antes indicada, aunque no se le indicara textualmente que la fianza prestada había sido "congelada" hasta tanto se emitiera una decisión, resolución u orden.
Por estos fundamentos, se expide el auto solicitado, se revoca aquella parte del dictamen del DACO que relevó de responsabilidad a El Fénix de Puerto Rico y se resuelve que El Fénix está obligada solidariamente con los restantes recurridos a satisfacerle al recurrente la suma de $16,136.83, hasta el monto de la fianza otorgada.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General